# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 15-0366V
Filed: February 4, 2016

* * * * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| BRADLEY J. RICHARDSON, * | |
| * | |
| Petitioner, * | |
| v. * | Finding of Fact; Six Month Requirement; |
| * | Special Processing Unit ("SPU") |
| SECRETARY OF HEALTH * | |
| AND HUMAN SERVICES, * | |
| * | |
| Respondent. * | |
| * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

*Isaiah R. Kalinowski*, Maglio Christopher & Toale, PA, Washington, DC, for petitioner.
*Jennifer L. Reynaud*, U.S. Department of Justice, Washington, DC, for respondent.

### ORDER and RULING ON FACTS[1]

**Dorsey,** Chief Special Master:

On April 10, 2015, Bradley J. Richardson ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, et. seq, (the "Vaccine Act" or "Program"). The petition alleges that petitioner developed Guillain-Barré syndrome ("GBS") as a result of receiving an influenza ("flu") vaccine on November 1, 2012. Petition at 1-2. The case was assigned to the Special Processing Unit ("SPU").

### I. Procedural History

On June 10, 2015, an initial status conference was held with the staff attorney managing this case. During the status conference, it was noted that the records filed by petitioner had not established that he suffered the residual effects of his injury for more than six months. Petitioner was ordered to file the additional records regarding the six month requirement as well as any outstanding records within 45 days. See Order, dated June 12, 2015.

---
[1] Because this unpublished order and ruling contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

On August 26, 2015, and September 23, 2015, petitioner filed records from his former employer and affidavits/personal statements from family, friends and coworkers to establish that he suffered the residual effects of his injury for more than six months. Also on September 23, 2015, petitioner filed a status report stating that a follow-up appointment with his former neurologist, Dr. Chennu, had been scheduled in order for Dr. Chennu to assess petitioner's neurologic status. Petitioner stated that he would file those records as soon as possible, and otherwise certified the record as complete.

On November 9, 2015, respondent filed a status report stating that she "leaves it to the Chief Special Master to determine whether the allegations of petitioner, his associates and family members are credible and reliable, and whether a preponderance of the evidence establishes that he suffered the sequella of his alleged vaccine-injury for more than six months." Respondent's Status Report dated Nov. 9, 2015.

On December 10, 2015, petitioner filed the records from his November 20, 2015 appointment with Dr. Chennu. Petitioner subsequently filed his Statement of Completion on December 10, 2015.

## II.     Fact History

On November 1, 2012, petitioner received a trivalent influenza ("flu") vaccine at the office of his employer, CD Hartnett Company, in Fort Worth, Texas. Petitioner's Exhibit ("Pet. Ex.) 1 at 2; Pet. Ex. 6 at 1-3. Petitioner alleges that several days later, he began to notice a tingling sensation in his hands and feet, which quickly progressed to complete numbness in his lower extremities. Petition at 2, ¶4. He states that his lower legs below the knee "locked up" and one side of his face became similarly affected. Id.

On November 10, 2012, petitioner presented to the Emergency Department ("ED") of Harris Methodist Hospital with complaints of tingling in his hands and feet for the past four days. Pet. Ex. 2 at 550. He complained that he "took a flu shot and hadn't felt right since." Id. Petitioner underwent a CT scan of his head which did not reveal any acute intracranial process. Id.

Petitioner returned to the ED on November 12, 2012, again complaining of numbness and tingling bilaterally to his hands, feet, and calves. Pet. Ex. 2 at 100. Upon examination, it was noted that petitioner was experiencing numbness and facial asymmetry (mild right sided facial droop). Id. at 101. Petitioner was admitted for additional testing and observation.

On November 13, 2012, after a workup and laboratory testing, Dr. Dinesh Bhambhvani documented that petitioner's symptoms were "consistent with Guillain Barre syndrome associated with right facial neuropathy, most likely etiology is flu vaccine." Pet. Ex. 2 at 113. Initially, Dr. Bhambhvani noted that petitioner's peripheral symptoms were mostly sensory and that there was no need for IVIG or plasmapheresis.

The next day, Dr. Mehnazi Roshani ordered that petitioner be administered one dose of IVIG and ordered an MRI of petitioner's brain.  Id. at 118.

Cerebral spinal fluid ("CSF") testing revealed elevated red and white blood cells, as well as an elevated protein count.  Pet. Ex. 2 at 514.  The elevated protein level was viewed as "abnormal and consistent with Guillain-Barré syndrome associated with right facial neuropathy," and IVIG treatments were continued for a total of five days.  Id. at 142-50.  Dr. Bhambhvani noted that the "[m]ost likely etiology is flu vaccine."  Id.  Petitioner was discharged on November 20, 2012, with a diagnosis of GBS, numbness and tingling, acute back pain and hypertension.  Id. at 104.

Following his discharge from the hospital, on December 7, 2012, petitioner presented to Dr. Yamimi Chennu of Tarrant Neurology Consultants, who reviewed petitioner's medical history.  Dr. Chennu noted that petitioner continued to complain of numbness, tingling and a feeling of cool sensation involving all limbs.  Petitioner also complained that he continued to feel weakness, but that he was slowly making progress.  Dr. Chennu noted that other than a venous anomaly in the left cerebellar hemisphere, petitioner's brain MRI was unremarkable.  Dr. Chennu scheduled EMG/NCS diagnostic testing and referred petitioner for physical therapy.  Pet. Ex. 3 at 8-10.  Dr. Chennu noted that he could not release petitioner back to work until he was cleared from physical therapy.  Id. at 10.

Four weeks later, petitioner returned to Dr. Chennu for a follow-up visit.  Pet. Ex. 3 at 12.  Dr. Chennu noted that petitioner had not yet been released from physical therapy, but that he reported improvement since his last visit.  Id. Petitioner stated that he was continuing to experience fatigue and generalized weakness.  Id.

Petitioner's next appointment with Dr. Chennu was on February 6, 2013.  Petitioner reported overall improvement, although he stated that he was still experiencing numbness and tingling, mostly involving his feet.  Pet. Ex. 3 at 15.

In his affidavit, petitioner stated that he was unable to return to his job as a supervisor at work for three and a half months, which placed him and his family in severe financial straits.  Pet. Ex. 8 at 2.  He stated that he convinced his doctors and his employer to allow him to work, if even only a light duty restriction.  Petitioner did return to work in February 2013, but he did not return to his previous active job duties and had to remain seated for most of the day.  Id.  Petitioner also claimed that he continued to experience great difficulty in returning to productive work.  He could not walk, stand or sit for any length of time without significant pain until approximately May or June of 2013.  Id.

Petitioner states that because he was told that there was nothing else that could be done to alleviate his symptoms, other than the passage of time, he did not return to seek medical attention or treatment for his residual symptoms after February 2013.  Pet. Ex. 3 at 2.  Because of his financial and employment circumstances, petitioner states

3

that he was careful not to take time off of work to go to the doctor's office without a significant reason.  Id.

Petitioner's most recent medical record documents a visit to Dr. Chennu on November 20, 2015.  Pet. Ex. 16.  Dr. Chennu noted that petitioner made "tremendous progress from Guillian Barre syndrome," and at this time "has no abnormalities on neurological exam."  Id. at 4.

Petitioner filed a number of affidavits and personal statements from family, friends and coworkers on September 23, 2015, to describe their observation and knowledge of petitioner's condition after February 2013.  See Pet. Exs. 10-15.

Petitioner's operations manager, Billy Ellis, recalled that petitioner had problems walking around the office, standing and sitting after he returned to work in 2013.  Pet. Ex. 10.  Mr. Ellis stated that to the best of his recollection, petitioner continued to struggle with these symptoms at least into May 2013.  Id. at 2.

Petitioner's sister, Misty Richardson Scoggins, specifically recalled that in the summer of 2013, petitioner had lost his balance and fallen "at least 2-3 times" while mowing the front lawn.  Pet. Ex. 11 at 1.  She also recalled that in June 2013, she attended a baby shower for petitioner and his wife, and observed that petitioner was in pain.  Id.  Ms. Scoggins stated that petitioner no longer attends many of her son's activities as he doesn't have the energy to walk from the parking lot to the field and then spend several hours watching baseball.  Id.

Petitioner's mother, Deborah Watkins, recalls speaking with petitioner after one of his doctor visits in 2013, and learning that his doctors "couldn't do anything else for him and it was going to take time for him to heal."  Pet. Ex. 13 at 1.  Ms. Watkins also recalled in the summer of 2013, during the baby shower for petitioner and his wife, that petitioner struggled with his balance while trying to set up folding chairs.  Id.  She also states that "to this day, [petitioner] still struggles with stamina, weakness and his balance. Just a few weeks ago, he walked up to my front porch and has to hold on to the porch railings for support."  Id. at 1-2.

Petitioner's step-father, close friend and his wife's friend, all similarly recounted observations of petitioner's loss of balance, fatigue and weakness in their personal statements. See Pet. Exs. 12, 14-15.

### III.     Discussion

Under the Vaccine Act, a petition for compensation must contain "supporting documentation, demonstrating that the person who suffered [a vaccine related injury] ... suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine."  42 U.S.C. § 300aa–11(c)(1)(D)(i).  The burden of establishing, by a preponderance of the evidence, the persistence of a vaccine-caused injury for longer than six months is borne by

petitioners. *Song v. Sec'y of Health & Human Servs.*, 31 Fed. Cl. 61, 65–66, *aff'd*, 41 F.3d 1520 (Fed.Cir.1994).  However, dismissal is not appropriate if it appears the parties reasonably contest the length of time that petitioner has suffered from the effects of his alleged vaccine injury.  *See, e.g., Faup v. Sec'y of Health & Human Servs.*, No. 12-87V, 2015 WL 443802, at *4 (Fed. Cl. Sepc. Mstr. Jan. 13, 2015).

Although a petitioner cannot establish the length or ongoing nature of an injury merely through his self-assertion, the fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from his or her alleged injury. *See, e.g.*, *Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (finding that a petitioner suffered from residual symptoms that due to their mild nature did not require medical care).

Here, there is no dispute that petitioner received the flu vaccine on November 1, 2012, and he must therefore show that his alleged injuries lasted more than six months after administration of the vaccine. Herren, 2014 WL 3889070, at *2; *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset).  Thus, petitioner must demonstrate by preponderant evidence that his injuries continued through May 1, 2013.

The affidavits and personal statements submitted by petitioner offer some corroboration of his claim that he continued to experience symptoms related to his injury for more than six months post-vaccination, and why he did not seek additional medical treatment.  *See generally* Pet. Exs. 10-15.   Petitioner's operations manager recalls that petitioner exhibited symptoms of his injury until at least May 2013.  Pet. Ex. 10 at 2.  Three of the personal statements reference a specific event, a baby shower held sometime in June 2013, where petitioner was observed either in pain or displaying fatigue and/or weakness.

Although these statements are less probative than contemporaneous medical records, the undersigned credits these statements and finds them persuasive to establish that petitioner suffered the residual effects of his injuries for more than six months.  The personal statements are also consistent with petitioner's testimony and explanation for why he did not seek additional medical treatment after February 2013.

## IV. Conclusion

**Thus, the undersigned finds, based on the record as a whole, that petitioner has established that he suffered the residual effects of his GBS for longer than six months.**

**The parties are encouraged to consider an informal resolution of this claim. Petitioner shall file a joint status report by <u>Monday, March 7, 2016</u>, updating the court on the status of the parties' settlement discussions.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master